WELLS, FARGO & Co. *v.* UNITED STATES (No. 1761).[1]

1. CONSTRUCTION, PARAGRAPH 652, TARIFF ACT OF 1913—EJUSDEM GENERIS— "MECHANICAL PROCESS"—FIRING OF PAINTING.

In the expression of paragraph 652, tariff act of 1913, "such as are made wholly or in part by stenciling or any other mechanical process," the words "mechanical process" should be construed, under the rule of ejusdem generis, as relating to a mechanical process of like kind as stenciling; that is to say, a process for producing the representation or artistic effect, and not a process for fixing more permanently the production of the artist. The "firing" of a painting on earthenware is not a "mechanical process" within the paragraph.—Bour *v.* United States (91 Fed., 533) distinguished.

2. MINERAL-PAINTED PLAQUES AND ORNAMENTAL MINERAL-PAINTED VASES.

Earthenware vases and plaques painted in mineral colors and "fired," the original work of an artist and having no utilitarian purpose, are entitled to free entry under paragraph 652, tariff act of 1913, as paintings in mineral colors. They are not dutiable under paragraph 79 as plaques and vases "painted, colored, tinted, stained, enameled, gilded, printed or ornamented or decorated in any manner."

United States Court of Customs Appeals, May 21, 1917.

APPEAL from Board of United States General Appraisers, G. A. 7942 (T. D. 36585). [Reversed].

*John Quinn* for appellants.

*Bert Hanson*, Assistant Attorney General (*Thomas J. Doherty* and *Robert Hardison*, special attorneys), for the United States.

[Oral argument May 11, 1917, by Mr. Quinn and Mr. Doherty.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise involved in this case consists of one large vase and five panels or plaques, all the original work of an artist. Four of the panels are about 14 inches in length and 10 inches in height, and the fifth panel is upwards of 14 inches in width by about 20 inches in height. The sixth article, a pear-shaped vase, is of a diameter of about 12 inches and of a height of upwards of 14 inches, with a small opening at the top and with no handles and no lips, and not designed either for water or for carrying, but solely as a painted decorative piece.

---

[1] T. D. 37266 (33 Treas. Dec., 18).

The articles in question are the work of a recognized modern French artist. They have no utilitarian purpose, but are designed for works of art. These facts seem not to have been questioned, but the case was determined adversely to the importers upon a consideration of the provisions of law involved. The assessment was made under paragraph 79 of the tariff act of 1913, and the importers' claim was for free entry under paragraph 652, and alternatively for paintings in oil or water color under paragraph 376.

The two important provisions to be considered are paragraphs 79 and 652. We quote them at length:

79. Earthenware and crockery ware composed of a nonvitrified absorbent body, including white granite and semiporcelain earthenware, and cream-colored ware, and stoneware, including clock cases with or without movements, pill tiles, plaques, ornaments, toys, charms, vases, statues, statuettes, mugs, cups, steins, lamps, and all other articles composed wholly or in chief value of such ware; if plain white, plain yellow, plain brown, plain red, or plain black, not painted, colored, tinted, stained, enameled, gilded, printed, ornamented or decorated in any manner, and manufactures in chief value of such ware not specially provided for in this section, 35 per centum ad valorem; if painted, colored, tinted, stained, enameled, gilded, printed, or ornamented or decorated in any manner, and manufactures in chief value of such ware not specially provided for in this section, 40 per centum ad valorem.

652. Original paintings in oil, mineral, water, or other colors, pastels, original drawings and sketches in pen and ink or pencil and water colors, artists' proof etchings unbound, and engravings and woodcuts unbound, original sculptures or statuary, including not more than two replicas or reproductions of the same; but the terms "sculpture" and "statuary" as used in this paragraph shall be understood to include professional productions of sculptors only, whether in round, or in relief, in bronze, marble, stone, terra cotta, ivory, wood, or metal, or whether cut, carved, or otherwise wrought by hand from the solid block or mass of marble, stone, or alabaster, or from metal, or cast in bronze or other metal or substance, or from wax or plaster, made as the professional productions of sculptors only; and the words "painting" and "sculpture" and "statuary" as used in this paragraph shall not be understood to include any articles of utility, nor such as are made wholly or in part by stenciling or any other mechanical process; and the words "etchings," "engravings," and "woodcuts" as used in this paragraph shall be understood to include only such as are printed by hand from plates or blocks etched or engraved with hand tools and not such as are printed from plates or blocks etched or engraved by photochemical or other mechanical processes.

The Government's contention below was that plaques and vases "painted, colored, tinted, stained, enameled, gilded, printed or ornamented or decorated in any manner," as provided for in paragraph 79, justified the assessment as made. The importers claimed free entry under paragraph 652 as "paintings in mineral colors."

The board, in deciding the case, held that paragraph 652 in its provision for original paintings in oil, mineral or water colors, was restricted by the language of the paragraph "shall not be understood to include any articles of utility, nor such as are made wholly or in part by stenciling or any other mechanical process," and held that these articles, having been, after the application of the paint to the

earthenware, subjected to the process of firing in kilns, are excluded by this limiting provision from the right to free entry.

A careful consideration of the language and the circumstances under which this paragraph was adopted leads us to the conclusion that the words "mechanical process" as employed in this paragraph should be construed under the rule of ejusdem generis as relating to a mechanical process of like kind as stenciling, that is to say, a process for producing the representation or artistic effect, and not to a process for fixing more permanently the production of the artist. It is well known that applications of varnish are made to oil paintings, or paintings in water color or crayon to prevent the colors from rubbing off. But it can hardly be said that this constitutes such a mechanical process as would fall within this language. Equally the process of firing is designed to fix in place the painting previously produced by mineral paints. It is unquestionably equally as artistic as ordinary oil, and we think it falls within the provisions of paragraph 652.

The board relied for its authority upon the case of Bour & Bouillon (T. D. 16422), affirmed in Bour *v.* United States (91 Fed., 533), and it is urged in this court that these decisions having been rendered and the language having been again employed in paragraph 652, the inference is that the Congress intended to adopt the language with the construction affixed thereto which had been previously given it.

The case T. D. 16422 did find among the findings of fact that the process of firing is a purely mechanical one, and an absolutely necessary part of the production of pictures, and that the paintings are worthless without being subjected to this process of firing, and that such process was a mechanical process within the meaning of that phrase as found in paragraph 575 of the act of 1894.

The board found as a fact, further in the same case, that the paintings in question were known "as porcelain or china paintings, or sometimes as mineral paintings on porcelain, and are not commonly and commercially known as 'paintings in oil or water colors,' which comprehend a separate and distinct class in the domain of art," and that "these pictures were painted by artists with what are known as *mineral or vitrifiable colors*, which comprehend a class entirely distinct from oil or water colors, these mineral colors being especially prepared with a vitrifiable flux, used like oil or water, as a vehicle through which they are applied to the surface of the porcelain by a process of firing or burning."

On appeal, Bour *v.* United States (91 Fed., 533), supra, the court did not adopt the finding of the board to the effect that the firing of these articles was a distinct process, but decided the case in the following language:

Inasmuch, therefore, as there is a conflict of testimony as to commercial designation, and as the whole evidence tends to show that these articles are, and are ordinarily known as, placques, they are specifically provided for under paragraph 85 of the act

of 1894, and were properly classified for duty at 35 per cent ad valorem as "plaques, painted or otherwise decorated in any manner," and are not free, under paragraph 575 of said act, as "paintings in oil or water colors * * * not otherwise specifically provided for * * * and not made wholly or in part by stenciling or other mechanical process."

Apparently resting the conclusion entirely on the ground that these articles were more specifically provided for in paragraph 85 of the act than in the paragraph relating to paintings in oil or water colors, and as the finding of the board excluded the productions there in question from paintings in oil or water colors on several grounds, the most convincing of which is that they were neither oil nor water colors, the case is not deemed conclusive of the question here involved. From the circumstance that the decision of the board did not rest wholly upon the view that the process in question was a mechanical process, and the further fact that the court did not adopt that finding in its decision, we think the rule of legislative adoption should not be applied, having in view the change in the statute as it appears in paragraph 652, introducing for the first time the words "mineral painting." We need go no further than to the board's decision, relied upon by the Government, for a statement that pictures produced in the manner here in question are known as mineral or vitrifiable colors, and comprehend a class entirely distinct from oil or water colors. When paintings in mineral colors, therefore, were introduced into paragraph 652, it would seem that the very wording implies paintings produced in the ordinary manner in which mineral paintings are produced. It is possible that mineral paintings not subjected to firing may be produced in a somewhat restricted way. But unquestionably the great body of mineral paintings are those produced in the manner in which those in question were produced, and little operation could be given to these extending words of paragraph 652 if it should be held that the process by which in the main mineral paintings are produced was eliminated under the general phrase "other mechanical process."

We conclude that under the rule of ejusdem generis the words should be restricted as above indicated. As this holding determines the issue in favor of the importers, it becomes unnecessary to consider the alternative claim under paragraph 376.

The decision of the Board of General Appraisers is *reversed*.