UNITED STATES *v.* ROYAL COPENHAGEN PORCELAIN, INC. (No. 3278[1])

United States Court of Customs and Patent Appeals, March 19, 1930

*Charles D. Lawrence,* Assistant Attorney General (*Marcus Higginbotham* and *James R. Ryan,* special attorneys, of counsel), for the United States.
*Curie, Lane & Wallace* (*Samuel Isenschmid* of counsel) for appellee.

[1] T. D. 43929.

[Oral argument February 17, 1930, by Mr. Ryan]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The appeal in this case involves a consideration of the following pertinent portions of paragraphs 211, 212, and 1704 of the Tariff Act of 1922:

PAR. 211. Earthenware and crockery ware composed of a nonvitrified absorbent body, including white granite and semiporcelain earthenware, and cream-colored ware, and *stoneware*, * * * ornaments, * * * statues, statuettes, * * * painted, colored, tinted, stained, enameled, gilded, printed, ornamented, or decorated in any manner, and manufactures in chief value of such ware, not specially provided for, 50 per centum ad valorem. [Italics ours.]

PAR. 212. China, porcelain, and other vitrified wares, including chemical porcelain ware and chemical stoneware, composed of a vitrified nonabsorbent body which when broken shows a vitrified or vitreous, or semivitrified or semivitreous fracture, and all bisque and parian wares, including * * * *vases*, * * * *painted*, colored, tinted, stained, enameled, gilded, printed, *or ornamented or decorated in any manner*, and manufactures in chief value of such ware not specially provided for, 70 per centum ad valorem; * * *. [Italics ours.]

PAR. 1704. Original paintings in oil, mineral, water, or other colors, * * * original sculptures or statuary, * * * but the terms "sculpture" and "statuary" as used in this paragraph shall be understood to include professional productions of sculptors only, whether in round or in relief, in bronze, marble, stone, terra cotta, ivory, wood, or metal, or whether cut, carved, or otherwise wrought by hand from the solid block or mass of marble, stone, or alabaster, or from metal, or cast in bronze or other metal or substance, or from wax or plaster, made as the professional productions of sculptors only; and the words "painting" and "sculpture" and "statuary" as used in this paragraph shall not be understood to include any article of utility, nor such as are made wholly or in part by stenciling. or any other mechanical process; * * *.

The merchandise, the classification of which is here in dispute, consists of four articles: Exhibit A, a figure of a bear, said to be 8 inches in height; Exhibit B, a figure of a monkey, said to be 10 inches high; and Exhibits C and D, vases, said to be 18 inches in height (photographs only before us). All of them, according to the report of the collector and the protest, were assessed for duty at 70 per centum under paragraph 212. The court below in its opinion states that Exhibits A and B were assessed under paragraph 211 at 50 per centum and that Exhibits C and D were assessed under paragraph 212 at 70 per centum. The examiner's notation on the invoice, which is identified by the witnesses, indicates that the Rode vase, Exhibit C, was assessed at 70 per centum under paragraph 212, while the Jais Nielsen vase, Exhibit D, was assessed under paragraph 211 at 50 per centum. The invoice further indicates that Exhibits A and B were assessed under paragraph 211 at 50 per centum.

The importer protested the classification, claiming the merchandise to be dutiable at 20 per centum ad valorem under paragraph 1449 or free of duty under paragraph 1704, 1705, 1706, 1707, or 1708. In this court the appellee relies solely upon its claim that the goods were properly classifiable under paragraph 1704.

In the court below it was pointed out that they could not be held to be free of duty under paragraph 1705, 1706, 1707, or 1708, for the reason that Treasury regulations with reference to their free admission had not been complied with. In this court attention is called to the fact that paragraph 1704 does not provide for any Treasury regulations similar to those provided for in the other art paragraphs, which probably accounts for the apparent abandonment of the claims for free entry under the other paragraphs. The applicability of the other paragraphs to the merchandise involved is, therefore, not before us and is not considered.

The evidence shows, and it is conceded, that the goods were produced by professional sculptors and artists. It further shows that the bear and the monkey were made by the Danish sculptor, Knud Kyhn, who created the figures of the bear and the monkey, modeled them himself with his own hands by means of ordinary tools; that by him they were then cut into halves and hollowed out and put together again; that the hollowing out prevented cracking while being fired; that they were fired at a low temperature and then painted and again fired at a high temperature; that they were not cast, and that the material of which the monkey and the bear were made was a special sort of clay called pottery clay which was sent to him by the "works" (referring to his employer) and which, he states, is fired at a very high temperature.

One of the vases was made by Gotfred Rode, a painter and artist, and the other by Jais Nielsen, who is a painter, an artist, and a ceramic artist. The productions are original and they are conceded to be vases and may be said to be chinaware, porcelain, or other vitrified wares upon which the artists painted original paintings which were the artists' own conception. Exhibit C is in three colors, cobalt, gold precipitate (a reddish gold), and chrome oxide (green), and the said paints are the same colors as those used by painters in oil paintings except that the paints are dry and mixed with water. The design was first drawn on the vase in charcoal and then painted and then fired. Exhibit D was made in substantially the same manner, the design first being sketched and then painted with cobalt and iron, then glazed and fired. The artists who made the vases also made the paintings thereon.

There is testimony in the record by Carl Johan Nillson, president of Royal Copenhagen Porcelain (Inc.), whose business was selling the ware, to the effect that the vases have no utilitarian purpose and

that articles of this character are owned and displayed by the Metropolitan Museum of Art and other art museums. He furthermore said that he could not tell exactly what kind of material Exhibits A and B were made from, but that it was quartz or feldspar and that it was not terra cotta but stone; that they were not of marble; and that the retail price in this country of Exhibit A was $200, of Exhibit B $300, and of the vases, Exhibits C and D, $500 and $700, respectively.

It is contended by the importer that Exhibits A and B are original sculptures or statuary and are the professional production of sculptors and, therefore, aptly described in paragraph 1704 and free of duty thereunder, and that Exhibits C and D are original paintings in mineral, not made wholly or in part by stenciling or other mechanical process and are likewise described and classifiable under paragraph 1704.

The Government urges that Exhibits A and B are not provided for in paragraph 1704 for the reason, among others assigned, that they are not composed of "bronze, marble, stone, terra cotta, ivory, wood, or metal" and that the last-quoted words are words of limitation, and that since the articles are not composed of any of the materials listed in the phrase they are not included within the paragraph. As to Exhibits C and D, the Government contends that they are vases of vitrified material "painted * * * ornamented or decorated in any manner" and that they are not original paintings in mineral as that term is commonly understood. As to Exhibits C and D, the Government contends that they are articles of utility and, therefore, excluded from paragraph 1704. The record in this case, we think, clearly shows that Exhibits C and D are not articles of utility but are ornamental only. The court below, in holding the vases classifiable under paragraph 1704, employed a line of reasoning which is difficult for us to follow:

Whether painted or not, we conclude, however, that the vases themselves are works of art in the line of sculpture. The paintings are artistic and produced by professional artists and are of rather a fine and delicate quality, purely decorative and ornamental.

These facts appear from the record and do not seem to be disputed on the part of the Government. Hence we are of the opinion both from the testimony and the inspection of the articles that the protest is well founded and the articles are free of duty under paragraph 1704.

The classification of Exhibits A and B seems to us to depend primarily upon the question as to whether or not they are made of terra cotta. The importer has cited many definitions for the term "terra cotta," some of which show it to be a material very similar in texture, quality, and use to the material from which these articles are made. It must also be conceded that original statuary such as is provided for in paragraph 1704 is made of terra cotta. Congress recognized

that fact or else merchandise of that character would not be referred to in the act. These facts, however, do not show that Exhibits A and B are made of terra cotta. The collector's classification would raise the presumption that they were not, and importer's own witness (although his qualifications are not the best) said in no uncertain terms "It is not terra cotta; it is stone." In the light of these facts, we are not at liberty to say that the goods are of terra cotta. It is clear to us that they are not of any of the other materials mentioned in the paragraph. Although appellant's witness says they are stone, the artist who made them stated that they were made of clay, and so describes the material and manner of their construction as to warrant the conclusion that they are stoneware, and since they are stoneware ornaments, statues, or statuettes, painted, they fall within paragraph 211 for dutiable purposes.

While it seems somewhat inappropriate to regard vases like those at bar as original paintings, yet we are persuaded to conclude that they must, in this instance, be so classified.

In the Tariff Act of 1909 there was the following provision:

717. Works of art, including *paintings in oil, mineral, water, or other colors,* * * * in existence more than twenty years prior to the date of their importation * * *. [Italics ours.]

We know of no provision for "paintings * * * in mineral" ever having been included in any prior tariff act. In paragraph 652 of the Tariff Act of 1913, the words "paintings in oil, mineral, water or other colors," etc., are found, and substantially the same wording is repeated in paragraph 1704 of the Tariff Act of 1922.

In *Wells, Fargo & Co.* v. *United States,* 8 Ct. Cust. Appls. 125, T. D. 37266, this court had this identical question before it. The classification of one large vase and five panels or plaques, all original paintings in mineral, was before the court. The main question there decided was whether or not the process of firing the merchandise was a "mechanical process" within the meaning of the provision in the paragraph. The court held that it was not such a mechanical process as was therein provided for, cited *Bour & Bouillon,* T. D. 16422, and *Bour* v. *United States,* 91 Fed. 533, and held the merchandise dutiable as original paintings in mineral. The court in an opinion by Presiding Judge Montgomery there said:

We need go no further than to the board's decision, relied upon by the Government, for a statement that pictures produced in the manner here in question are known as mineral or vitrifiable colors, and comprehend a class entirely distinct from oil or water colors. When paintings in mineral colors, therefore, were introduced into paragraph 652, it would seem that the very wording implies paintings produced in the ordinary manner in which mineral paintings are produced. It is possible that mineral paintings not subjected to firing may be produced in a somewhat restricted way. But unquestionably the great body of mineral paintings are those produced in the manner in which those in question

were produced, and little operation could be given to these extending words of paragraph 652 if it should be held that the process by which in the main mineral paintings are produced was eliminated under the general phrase "other mechanical process."

We conclude that under the rule of ejusdem generis the words should be restricted as above indicated. As this holding determines the issue in favor of the importers, it becomes unnecessary to consider the alternative claim under paragraph 376.

The case of *Bour & Bouillon, supra,* in an opinion by Somerville, General Appraiser, evidently upon a very full record, discussed in detail the subject of paintings in mineral. The record there showed that only mineral colors can be used on china. It is admitted in this case that the painting on the vases is in mineral.

Adopting the reasoning in *Wells, Fargo & Co.* v. *United States, supra,* we think Congress would not have used the words "in mineral," if it had intended to exclude from the paragraph the kind of paintings upon which mineral or vitrified colors were used. If the words "in mineral" are to be given any meaning, therefore, it seems to compel the conclusion that not only plaques painted in mineral, but vases such as those at bar painted in mineral, must also be regarded for tariff purposes as original paintings in mineral and free of duty under paragraph 1704, *supra.*

The judgment of the United States Customs Court must, therefore, be *modified* and the cause *remanded.* It must be *reversed* and the cause *remanded* as to Exhibits A and B and *affirmed* as to Exhibits C and D. Exhibits A and B are classifiable under paragraph 211 and dutiable at 50 per centum ad valorem. Exhibits C and D are free of duty under paragraph 1704. The cause is *remanded* for further proceedings not inconsistent with the views herein expressed.