United States *v.* F. G. R. Roth (No. 3772)[1]

[1] T. D. 47347.

294

United States Court of Customs and Patent Appeals, October 29, 1934

*Joseph R. Jackson*, Assistant Attorney General (*Thomas J. Canty* and *Ralph Folks*, special attorneys, of counsel), for the United States.

*Curie, Lane & Wallace* (*William H. Fox* and *Samuel Isenschmid* of counsel) for appellee.

[Oral argument October 5, 1934, by Mr. Folks and Mr. Isenschmid]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court (Third Division) sustaining a protest of appellee against the classification and assessment with duty by the collector at the port of New York of certain figures as decorated earthenware under paragraph 211 of the Tariff Act of 1922. Appellee's protest, *inter alia*, claimed free entry of the merchandise under paragraph 1704 of said act. The trial court held the merchandise to be original sculptures and first and second replicas thereof, and entitled to free entry under the provisions of said paragraph 1704. Judgment was entered accordingly, and from such judgment this appeal was taken.

The competing paragraphs of said Tariff Act of 1922 read as follows:

PAR. 211. Earthenware and crockery ware composed of a nonvitrified absorbent body, including white granite and semiporcelain earthenware, and cream-

colored ware, and stoneware, including clock cases with or without movements, pill tiles, plaques, ornaments, toys, charms, vases, statues, statuettes, mugs, cups, steins, lamps, and all other articles composed wholly or in chief value of such ware; plain white, plain yellow, plain brown, plain red, or plain black, not painted, colored, tinted, stained, enameled, gilded, printed, ornamented, or decorated in any manner, and manufactures in chief value of such ware not specially provided for, 45 per centum ad valorem; painted, colored, tinted, stained, enameled, gilded, printed, ornamented, or decorated in any manner, and manufactures in chief value of such ware, not specially provided for, 50 per centum ad valorem.

PAR. 1704. Original paintings in oil, mineral, water, or other colors, pastels, original drawings and sketches in pen, ink, pencil, or water colors, artists' proof etchings unbound, and engravings and woodcuts unbound, original sculptures or statuary, including not more than two replicas or reproductions of the same; but the terms "sculpture" and "statuary" as used in this paragraph shall be understood to include professional productions of sculptors only, whether in round or in relief, in bronze, marble, stone, terra cotta, ivory, wood, or metal, or whether cut, carved, or otherwise wrought by hand from the solid block or mass of marble, stone, or alabaster, or from metal, or cast in bronze or other metal or substance, or from wax or plaster, made as the professional productions of sculptors only; and the words "painting" and "sculpture" and "statuary" as used in this paragraph shall not be understood to include any articles of utility, nor such as are made wholly or in part by stenciling or any other mechanical process; and the words "etchings," "engravings," and "woodcuts" as used in this paragraph shall be understood to include only such as are printed by hand from plates or blocks etched or engraved with hand tools and not such as are printed from plates or blocks etched or engraved by photochemical or other mechanical processes.

The evidence produced before the trial court consists of the testimony of appellee, and Exhibits 1 to 8, inclusive, offered in evidence by appellee and admitted.

Said exhibits represented the articles here involved, as follows:

Exhibit 1. Modelled Bear with Cubs, panels (photograph only);
Exhibit 2. Modelled Puma (photograph only);
Exhibit 3. Modelled Terrier Dog (photograph only);
Exhibit 4. Modelled Cat (one of the panels imported);
Exhibit 5. Modelled Polar Bear Figures, and modelled Sleeping Scholar (photograph and the statue of the Polar Bear Figures);
Exhibit 6. Modelled Bear with Cubs (photograph and the statue of the figure imported);
Exhibit 7. Modelled Scotch Terrier Sitting (photograph and the statue of the figure imported);
Exhibit 8. Modelled Watch Dog (photograph and the statue of the figure imported).

At the close of the hearing, the trial court permitted all of the articles above mentioned to be withdrawn except Exhibit 4, and the photographs alone were left in evidence, upon appellee's agreement to return the articles for the inspection of the court if desired.

The record establishes that appellee is a professional sculptor and a citizen and resident of the United States.

With respect to the method by which the figures here in question were produced, the testimony is summarized by the trial court in its opinion as follows:

\* \* \* the witness testified that while in this country he conceived and made the clay models which were then cast in plaster of paris; that he took these models to England and had molds made from them in the Doulton factory, after which he personally examined each mold carefully and did whatever retouching he considered necessary thereon; that when the molds were thus completed the "stoneware material" was pressed into them; that the final articles produced in the molds were baked in a kiln, glazed, and reglazed; that he gave very minute instructions with respect to the glazing thereof and personally selected all of the colors used; that the only work done by the Doulton Co. on these articles consisted of the mechanical process of making the molds and pressing the "stoneware" into the molds; and that this is the usual method followed by sculptors and is practically the same process used for producing bronze castings, except that the bronze is not baked. The witness stated further that the 27 pieces shown on the invoice in this case represent an original and first and second replica of each subject; that he has signed each piece as his original production; and that these importations are not articles of utility but are used only for decorative purposes.

We think the foregoing is, in a general way, a correct statement of appellee's testimony, which was the only testimony offered upon the trial. The Government introduced no evidence.

The Government contends that the judgment of the trial court is not supported by any substantial evidence and should be reversed for that reason. More particularly, the Government insists that, in a tariff sense, the articles are not sculptures; that the figures are not made from any of the materials provided for in paragraph 1704; that the imported articles may not be properly classified under the provisions of paragraph 1704 because of the mechanical processes used in their production, and that the articles are *eo nomine* provided for in paragraph 211.

It is our opinion that appellee established *prima facie* that the articles in question are original sculptures or statuary, within the meaning of those words as used in said paragraph 1704, and first and second replicas thereof, composed of materials provided for in said paragraph.

In the leading case of *United States* v. *Olivotti & Co.*, 7 Ct. Cust. Appls. 46, T. D. 36309, this court said:

\* \* \* Sculpture as an art is that branch of the free fine arts which chisels or carves out of stone or other solid material or models in clay or other plastic substance for subsequent reproduction by carving or casting, imitations of natural objects, chiefly the human form, and represents such objects in their true proportions of length, breadth, and thickness, or of length and breadth only. \* \* \*

That appellee is a professional sculptor is established by the record. With respect to the articles in question, he testified as follows:

Q. Have any of the articles been exhibited in art museums or in art galleries, which are before the court today?—A. Yes. I have had the bears in practically

every exhibition in New York. I have received a prize on the bears, on the group of the Bear and the Cubs, and another, I think it was the Watch Dog, at the Grand Central Art Gallery.

Q. You received a prize?—A. I received a prize on those works of art.

Q. They have been recognized by artists as works of art?—A. Yes. They are never questioned.

Q. In your opinion as a professional sculptor would you say that all of the articles before the court are representative works of the free fine art of sculpture?— A. Certainly.

He testified that he first made models of the figures here in question in clay and that the models were then cast in plaster of paris; this he did in the United States. He further testified that he then took the articles to London, England, where molds were made at the Doulton factory under his direction; that after the molds were made he retouched them where necessary; that stoneware material was then pressed into the molds, reproducing his models; that the material was then baked in a kiln and then glazed, and that the glazing was then baked on the articles, the articles being baked in the kiln a second time. Appellee further testified as follows:

\* \* \* Now, that is practically the same process as would be used in casting in any bronze; the only difference is that the material is different. In bronze casting the process is very much the same, excepting that it is not baked.

Appellee further testified that he selected the colors for glazing and gave the Doulton factory very minute instructions with respect to the glazing.

We are of the opinion that the fact that appellee did not personally make the molds, or do the baking or the glazing, is immaterial, for these operations were merely for the purpose of placing in an enduring form the conception of the sculptor fully developed in the models from which the figures were cast. The art exercised by appellee was the art defined in the *Olivotti* case as sculpture, all of the figures here involved being representations "of natural objects, \* \* \* in their true proportions of length, breadth, and thickness, or of length and breadth only."

We have no hesitation in holding that the involved articles are original sculptures, and replicas thereof, within the meaning of the term "sculpture" as defined in said *Olivotti* case, *supra*.

The Government next contends that the figures in question are not made from any of the materials provided for in paragraph 1704, and in support of this contention relies upon our decision in the case of *United States* v. *Royal Copenhagen Porcelain, Inc.*, 17 C. C. P. A. (Customs) 464, T. D. 43929. Certain of the articles involved in that case were produced by professional sculptors and were composed of a special sort of clay called pottery clay. They were not cast but, after being modelled by the sculptor, the figures were cut in half, hollowed out, and put together again so as to prevent their

cracking while being fired. As to such articles we held that they were not made of any of the materials specifically named in the paragraph relating to sculptures not cast, to wit, bronze, marble, stone, terra cotta, ivory, wood, or metal, but were made of clay and hence did not fall within the provisions of paragraph 1704 of the Tariff Act of 1922.

Had the articles here involved not been cast, we would come to a like conclusion here, but paragraph 1704 specifically provides that original sculptures or statuary, the production of professional sculptors, "cast in bronze or other metal or *substance*", shall be admitted free. It is clear from the paragraph that, if *cast*, the material from which the articles are made may be any substance, and there is no limitation of materials as in the case of sculpture or statuary *not cast*. Therefore our decision in said last cited case has no application to the case at bar.

The contention of the Government that the articles here involved may not be properly classified under the provisions of paragraph 1704 because of the mechanical processes used in their production is untenable. Appellee testified that the process employed in producing the figures is practically the same as would be used in casting in any bronze, and this testimony is corroborated by reference to standard authorities upon this subject. See Encyclopaedia Britannica (14th ed.), volume 20, pages 229, 230.

The provision of paragraph 1704 relative to this point reads:

* * * and the words "painting" and "sculpture" and "statuary" as used in this paragraph shall not be understood to include any articles of utility, nor such as are made wholly or in part by stenciling or any other mechanical process * * *.

This language was construed by this court in the case of *Wells, Fargo & Co.* v. *United States*, 8 Ct. Cust. Appls. 125, T. D. 37266, arising under the Tariff Act of 1913, paragraph 652 of which contained the same provision upon this point as does paragraph 1704 of the Tariff Act of 1922. The court there said:

A careful consideration of the language and the circumstances under which this paragraph was adopted leads us to the conclusion that the words "mechanical process" as employed in this paragraph should be construed under the rule of ejusdem generis as relating to a mechanical process of like kind as stenciling, that is to say, a process for producing the representation or artistic effect, and not to a process for fixing more permanently the production of the artist. It is well known that applications of varnish are made to oil paintings, or paintings in water color or crayon to prevent the colors from rubbing off. But it can hardly be said that this constitutes such a mechanical process as would fall within this language. Equally the process of firing is designed to fix in place the painting previously produced by mineral paints. It is unquestionably equally as artistic as ordinary oil, and we think it falls within the provisions of paragraph 652.

True, the casting process was not there involved, but to hold that casting is a mechanical process, within the meaning of the provision

under consideration, thereby excluding a cast article from the provisions of said paragraph 1704, would nullify the preceding words of the paragraph—"cast in bronze or other metal or substance."

We are clear that the articles here involved were not made by any mechanical process, within the meaning of those words as used in said paragraph 1704.

With respect to the Government's contention that the merchandise is *eo nomine* provided for in paragraph 211 and is therefore classifiable thereunder, we need only say that we are clear that it is more specifically provided for in paragraph 1704.

Finally, the Government contends that the exhibits in evidence demonstrate that the articles in question are not of that class or character entitled to classification as works of art, sculptures, etc., and cites in support of this contention our decision in the case of *United States* v. *Ehrich*, 22 C. C. P. A. (Customs) 1, T. D. 47019. It is sufficient to say that we there held that the articles there involved did not come within the definition of sculptures as adopted by this court in the case of *United States* v. *Olivotti & Co., supra,* but in this case the articles are shown to come within such definition.

The Government offered no evidence in the case at bar, and we find nothing in the exhibits before the court inconsistent with the testimony of appellee in the record. On the contrary, the exhibits tend to corroborate the claim that the imported articles are sculptures within the meaning of that term as defined in the *Olivotti* case, it being established that they were produced by a professional artist.

We agree with the trial court that upon the record before us, the imported articles are original sculptures and first and second replicas thereof, produced by appellee, a professional sculptor.

We therefore find no error in the decision of the trial court holding the articles to be entitled to free entry under said paragraph 1704, and its judgment sustaining the protest of appellee is *affirmed.*