UNITED STATES *v.* GUSTAV OBERLAENDER (No. 4044) [1]

[1] T. D. 49037.

United States Court of Customs and Patent Appeals, May 29, 1937

*Joseph R. Jackson*, Assistant Attorney General (*Joseph F. Donohue*, Special Attorney, and *Frank X. O'Donnell, Jr.*, junior attorney, of counsel), for the United States.

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument April 5, 1937, by Mr. Donohue and Mr. J. Stuart Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Thirteen porcelain plates, each of which was decorated with paintings and other embellishments, were imported at the port of Philadelphia by Gustav Oberlaender, the appellee, under the Tariff Act of 1930. They were classified by the collector as "porcelain plates with hand painted centers in mineral colors", and returned for duty at 70 per centum ad valorem, plus 10 cents per dozen pieces, under paragraph 212 of said act. They were claimed by the protest to be free of duty under paragraph 1807, or, alternatively, dutiable at only 20 per centum ad valorem under paragraph 1547 (a) or paragraph 1547 (b) of said act. The relevant provisions are as follows:

PAR. 212. China, porcelain, and other vitrified wares, including chemical porcelain ware and chemical stoneware, composed of a vitrified nonabsorbent body which when broken shows a vitrified or vitreous, or semivitrified or semivitreous fracture, and all bisque and parian wares, including clock cases with or without movements, plaques, pill tiles, ornaments, charms, vases, statues, statuettes, mugs, cups, steins, lamps, and all other articles composed wholly or in chief value of such ware, plain white, not painted, colored, tinted, stained, enameled, gilded, printed, or ornamented or decorated in any manner, and manufactures in chief value of such ware, not specially provided for, 60 per centum ad valorem; painted, colored,

tinted, stained, enameled, gilded, printed, or ornamented or decorated in any manner, and manufactures in chief value of such ware, not specially provided for, 70 per centum ad valorem. In addition to the foregoing there shall be paid a duty of 10 cents per dozen separate pieces on all tableware, kitchenware, and table and kitchen utensils.

PAR. 1807. Original paintings in oil, mineral, water, or other colors, pastels, original drawings and sketches in pen, ink, pencil, or water colors. artists' proof etchings unbound, and engravings and woodcuts unbound, original sculptures or statuary, including not more than two replicas or reproductions of the same; * * * and the words "painting", "drawing", "sketch", "sculpture", and "statuary" as used in this paragraph shall not be understood to include any articles of utility or for industrial use, nor such as are made wholly or in part by stenciling or any other mechanical process; * * *.

PAR. 1547. (a) Works of art, including (1) paintings in oil or water colors, pastels, pen and ink drawings, and copies, replicas, or reproductions of any of the same, * * * 20 per centum ad valorem.

(b) Paintings in oil, mineral, water, or other colors, pastels, and drawings and sketches in pen and ink, pencil, or water color, any of the foregoing (whether or not works of art) suitable as designs for use in the manufacture of textiles, floor coverings, wall paper, or wall coverings, 20 per centum ad valorem.

The United States Customs Court found that eight of the pieces had not been produced on the trial, and came to the conclusion that the court was not justified in disturbing the report of the collector without having seen the exhibits in question; therefore, as to them, the protest was overruled.

As to the remaining five pieces, consisting of a platter and four plates, the protest was sustained. Exhibit 1, the platter, was found to be entitled to free entry under said paragraph 1807. Exhibits 2 and 3, painted plates, were found to be works of art not specially provided for, and dutiable at 20 per centum ad valorem under the provisions of said paragraph 1547 (a). Exhibits 4 and 5, plates with painted centers, were found to be nonutilitarian original works of art and entitled to free entry under the provisions of said paragraph 1807. The Government has appealed, insisting upon the correctness of the collector's classification. There is no cross appeal.

It will be necessary to describe, to a considerable degree, the articles now before us. Two witnesses were called and examined before the trial court, namely, Gustav Oberlaender, the appellee, and Harry A. Eberhardt, of Philadelphia. Oberlaender resides at Reading, Pa., and is a retired manufacturer. It has been a practice of his, for some years, to collect artistic porcelain and chinaware, which he keeps in a small private museum which he has built at Reading. While this is a private museum it contains some sixty or seventy pieces, and is opened for exhibition to those who desire to see the works contained therein, and is used for the purpose of teaching classes from neighboring schools in connection with their study of art work. Among other pieces, he has purchased and placed in his museum the five exhibits.

which are here involved. They have never been used by him except for exhibition purposes. Mr. Oberlaender is not himself an artist, but claims to be, by experience, a connoisseur of works of art in his chosen hobby.

Exhibit 1 is a large porcelain platter which is supposed to represent, as a legend on the back thereof indicates, Queen Marie-Therese of Austria going to Fontainebleau, accompanied by her escorts. The platter is about twenty inches in length and fourteen inches in width. On the front is a painting describing the scene mentioned in the title, consisting of a coach, and a number of gaily clad courtiers and guards entering a valley, with trees in the background. The painting is surrounded by a number of decorative features, the basic tone being cobalt blue. At one side of the platter, on the edge, appears the motto of the Crown Prince of Bavaria, while on the opposite side is his monogram, on each side of which appears the painted representations of an angel. This exhibit purports to be signed by a person, who was, as testified to by the witness Oberlaender, "G. Sturm." The work is said to have been done in Meissen, Saxony, sometime between 1865 and 1875, according to the testimony of Oberlaender, the maker having died before the present owner obtained the piece. The reason which the witness gave for this conclusion is that the prince or monarch who first procured them reigned from 1860 to 1886. The testimony does not show for what purpose this exhibit was used during the time that it was in the possession of the ruling monarch, except that it was said to have been made on special order for his castle. Whether it was used for utilitarian purposes at that time is not shown by the record. It was purchased by the present owner in the year 1934.

Exhibits 2 and 3 are dinner plates, each approximately ten inches in diameter. Exhibit 2 contains a painting in the center, entitled on the back of the plate "Jacques-Benigne Bossuet." The painting is that of an elderly man dressed in a violet and white robe with a motto and crest above and below the portrait, upon the decorated margin of the plate. Exhibit 3 has a painted portrait of a lady, described on the back of the plate as "Duchess de Fontages." There is also a crest and motto above and below this portrait, on the decorated margin of the plate. The witness testified that the Duchess de Fontages died in 1866, and that the person who made this portrait was sent by the prince to Versailles to make the work, which was copied from another painting, the artist being unknown so far as this record shows. He also testified that the painting of Jacques-Benigne Bossuet was also painted in the same way, after he was dead, but whether it was a copy from another painting, or an original conception, is not shown by the testimony. It also was painted at Versailles. It does not appear from the record that these witnesses were qualified to make these statements.

Exhibits 4 and 5 are of a somewhat different type than Exhibits 2 and 3. They are plates approximately nine and one-half inches in diameter each, and contain paintings in the central portions. Exhibit 4 shows the entrance of Queen Marie-Therese of Austria into Arras in 1667, while Exhibit 5 shows a reception at Versailles. The margins of these plates are highly decorated and bear the legend "UNE FOI, UNE LOI, UN ROY." Exhibit 4, according to the witness Oberlaender, shows in the foreground a carriage, a number of figures, and the city of Allanche. Exhibit 5 shows a number of figures and a staircase and balcony, with a reception in progress.

The testimony shows that Exhibits 2 and 3 have no signatures or initials of the artist, and were made in a factory belonging to the Emperor of Germany, at Meissen, Saxony. On the plates marked Exhibits 4 and 5 there appear the initials on each, "C. G." When the witness Oberlaender first saw them they were on special shelves built for them in a cabinet on the wall of the castle. The testimony fails to show by whom Exhibits 2, 3, 4, and 5 were painted, and the only reason given for the testimony that they were painted by an artist was that Exhibits 3 and 4 are initialed, and that all of them show such work as could be done only by an artist. It is admitted that they are paintings on porcelain.

The witness Harry A. Eberhardt is in the business of restoring art goods and appraising works of art. He has worked in many museums of note, and has done some painting on porcelain. He expressed the opinion that the works in issue here were works of the free fine arts, on account of the skill and way in which they were executed, and that they were works of an artist.

The imported goods were classified under said paragraph 212. That they come within the language of said paragraph, "porcelain * * * wares * * * painted * * * or ornamented or decorated * * *" cannot be doubted. It remains to be seen whether they also come within the language of paragraphs 1807 and 1547 (a), or of either.

To be embraced within the language of paragraph 1807, the articles must first be "Original paintings." It was incumbent upon the importer to establish, by evidence, that they were such original paintings. To be original paintings, they must embody not only the professional skill, but the artistic imagination or conception of the artist as well. *United States* v. *J. E. Bernard & Co., Inc.*, 17 C. C. P. A. (Customs) 475, T. D. 43932; *American Express Co.* v. *United States*, T. D. 36765, 31 Treas. Dec. 344.

What is the evidence upon which such claim of originality here rests? The importer, a retired manufacturer, not an artist, but a connoisseur and collector, called attention to the fact that the large

piece, Exhibit 1, bore the name "G. Sturm," and Exhibits 4 and 5 the initials "C. G." Thereafter, the following appears in the record:

R. D. Q. As to the three pieces that are signed; is there any indication as to whether they are originals or copies?—A. They are painted in accordance with the wishes and the decorations of the King of Bavaria. I know; I have seen the castle. They were painted in connection with his castle.

R. D. Q. The question I intended to put was whether or not the fact they are signed indicates as to whether they are originals or replicas?—A. They are only originals.

R. D. Q. That is a definite indication on pieces which are signed or which are initialed by the artist?—A. Yes.

R. D. Q. Are you in any doubt about the pieces which are not signed as to whether or not they are originals?—A. I think they are originals.

    *     *     *     *     *     *     *

R. X Q. The scene painted on Exhibit 1 may be an original conception of the artist or it may be a copy from some other painting; is that correct?—A. No; most likely that is an original conception.

R. X Q. What is your basis for that statement?—A. I did not see any painting of that type in Versailles.

R. X Q. Referring to the painting on Exhibit 4; that may or may not be the conception of the artist who painted it; is that correct?—A. I think the artist conceived it, and he added these two angels.

R. X Q. What is your basis for that statement?—A. Because it is an unusual conception requested on the part of the King to have this thing painted.

R. X Q. Are you referring to the painting in the center?—A. To the painting in the center; yes.

R. X Q. You say that was painted at the request of the King?—A. Yes.

R. X Q. It was not an original conception of the artist who painted it?—A. The King ordered him to paint this picture and he left it to the artist to do the painting.

R. X Q. What is the foundation of that statement that the King ordered the artist to paint this picture?—A. I was there in his castle and saw what the King did, and that was his message and the way he proceeded. He was a great admirer of Louis XVI. He sent the artist to Versailles to get these plates for him.

R. X Q. You believe probably this is a copy?—A. It may be a painting that has been conceived by the artist.

R. X Q. The whole thing may be the copy of a plate used by Louis XVI?—A. That was in the castle of Louis XVI.

The witness Eberhardt stated, on the question of originality:

Q. Do you consider any signed piece like that is as an original?—A. An artist does not generally put his signature on a piece which he does not conceive himself.

    *     *     *     *     *     *     *

Q. Is it your judgment that the exhibits which are signed here or initialed are genuine originals?—A. They are genuine originals. No two pieces are alike with the exception of decalcomanias. Since decalcomanias have come in there are reproductions. But you can tell a decalcomania. These pieces are what are painted with a brush.

This completed the testimony as to originality.

The substance of this testimony is that the Exhibits 1, 4, and 5 are thought to be originals because they were signed, Exhibit 1 by a painter, who is deceased, and the others by a painter unknown. They

were painted on the order of the ruling prince, but from what cannot be known. The scenes depicted are from historical events occurring long prior to the painting of these exhibits. The best that can be said of such testimony is that it is based on conjecture and opinion.

In our opinion, the importer has not sustained the burden of proving that Exhibits 1, 4, and 5 are original paintings, as provided by said paragraph 1807. Much less has he established that they are replicas or reproductions of the same. *Petry Co.* v. *United States,* 11 Ct. Cust. Appls. 525, T. D. 39666. This being true, it does not become necessary to consider the other point presented by counsel, namely, whether the imported articles were articles of utility or for industrial use.

This leaves for consideration Exhibits 2 and 3, painted plates which have been held by the trial court to be properly classifiable under paragraph 1547 (a) as—

Works of art, including (1) paintings in oil or water colors, pastels, pen and ink drawings, and copies, replicas, or reproductions of any of the same.

In considering paragraph 1547, it will be noted that the Congress divided the dutiable works of art to be classified thereunder into two sections: first, "paintings in oil or water colors"; and second, "Paintings in oil, *mineral,* water or other colors." [Italics ours.] It is true, there are other distinctions in the two subparagraphs, but this one distinction is significant, that mineral colors are specifically included in one and not in the other. Looking also at paragraph 1807, we find, "paintings in oil, *mineral,* water, or other colors." [Italics ours.] The dutiable porcelain paragraph, paragraph 212, also includes porcelain articles "painted * * * *in any manner."* [Italics ours.]

A consideration of these provisions leads to the conclusion that here is a proper place for the application of the doctrine *expressio unius est exclusio alterius.* Obviously the Congress did not intend to include paintings in mineral colors in paragraph 1547 (a) or it would have said so. That it had such a distinction in mind, can be ascertained by a consideration of the language of the other paragraphs quoted. The paintings upon the plates, Exhibits 2 and 3, are with mineral colors; hence these exhibits were improperly held to be classifiable under said paragraph 1547 (a).

In *United States* v. *Royal Copenhagen Porcelain, Inc.,* 17 C. C. P. A. (Customs) 464, T. D. 43929, it was conceded that the imported works were originals, and that they were the works of artists. The paragraph also, under which they were given free entry, paragraph 1704 of the Tariff Act of 1922, contained the language "Original paintings * * * in *mineral* * * * colors." [Italics ours.] In that case, we called attention to the distinction created by Congress between paintings in oil and paintings in mineral colors, and referred at length to our former case of *Wells, Fargo & Co.* v. *United States,* 8 Ct. Cust. Appls. 125, T.

D. 37266.   In the last cited case, the originality of the works imported was conceded.   Here, Presiding Judge Montgomery, delivering the opinion of the court, called attention to the fact that for the first time, in paragraph 652 of the tariff act of October 13, 1913, the term *"mineral * * * colors"* [italics ours] was introduced, stating, in part:

\* \* \*   We need go no further than to the board's decision, relied upon by the Government, for a statement that pictures produced in the manner here in question are known as mineral or vitrifiable colors, and comprehend a class entirely distinct from oil or water colors.   \* \* \*

Doubtless the motivating reason for this congressional change of language arose from *Bour et al.* v. *United States,* 91 Fed. 533, where, in 1898, painted porcelain panels were held dutiable and not free, because painted with mineral colors.

No specific objection to the imposition of a "duty of 10 cents per dozen separate pieces on all tableware, kitchenware, and table and kitchen utensils," has been made, other than that paragraph 212 is not applicable.   Nor is any such alternative contention made.   It will, therefore, not be necessary to pass upon the point as to whether these imported articles are tableware, kitchenware, and table and kitchen utensils.

The classification, therefore, of the collector should have been sustained, and the judgment of the United States Customs Court is *reversed.*

DISSENTING OPINION

BLAND, Judge: I dissent from the holding of the majority that Exhibit 1 is neither an original painting in mineral colors under paragraph 1807 nor that it is not dutiable under paragraph 1547 (a) as a copy. It seems to me that it must be one or the other, *and if it is a copy it may be in mineral colors* and come under paragraph 1547 (a).

Furthermore, it seems too obvious to justify extended argument that these valuable works of art should not be assessed with a duty "of 10 cents per dozen separate pieces" as "tableware, kitchenware, and table and kitchen utensils." Courts may draw conclusions from proven facts and it seems anomalous to conclude that these articles were properly assessed with the duty of 10 cents per dozen separate pieces as tableware, etc. The importer protested against their classification as such and sustained his protest overwhelmingly by proving that they are works of art but, according to the majority not such as are provided for in the claimed paragraphs. If they are works of art, and surely no one can contend that they are not, they should not be assessed as kitchenware. If they are painted "porcelain" ware they are not necessarily painted tableware, etc.

GARRETT, Judge, joins in the dissent.